We'll hear argument first this morning in Case 13-975, T-Mobile South v. the City of Roswell, Georgia. Mr. Fisher? Mr. Chief Justice, and may it please the Court, local governments violate the in-writing requirement of Section 332 when they fail to issue a document separate from the administrative record that specifies the reasons for denying an application to construct a personal wireless facility. Any other construction would flout the very purpose of this provision, which is to enable meaningful judicial review. Indeed, allowing local governments to deny applications without specifying their reasons would require district courts across the country to embark on a process that would allow them to do so. That's not actually what the Court below said. It said that it could discern the reasons from the record. That's a very different statement than saying there are no reasons set forth. Justice Sotomayor, I'm not sure the Eleventh Circuit did actually specify what the reasons were. It did pronounce that it believed that the administrative record contained reasons. We don't deny that there are a bevy of potential reasons in the district courts — I'm sorry, in the administrative record. I counted 9 or 10 as I read the transcript and the minutes. The problem is we don't know which one of those were the City's real reasons for denying the permit. And therefore, we can't have the expedited proceeding that Section 332 contemplates. Alito, how far does your argument go? Suppose the instrument of denial, the letter, does not list any reasons, but it incorporates by reference or makes reference to some other document that sets out the reasons. Is that sufficient? We think that if the denial letter clearly directed us to some other document and said where the reasons were and that document was contemporaneously available, we think that would be enough. Now, neither of those things are present here. There's no explicit reference to any particular reasons in the minutes. It just simply says the reasons are available. And, of course, as the Solicitor General has pointed out, the minutes were not available. All right. Well, suppose the — Justice Alito? Just to follow up, I'm sorry to interrupt. Suppose the letter doesn't make a specific reference to some other document, but there is some other document known to the parties that has been approved by the town council and sets out the reasons. That would not be sufficient. There has to be an express reference in the instrument of denial. Right. I think the question is what does the decision say. That's the statutory term. And so the decision needs to provide the reasons. Now, you could have a situation like the Omnipoint case in the Sixth Circuit where instead of getting a separate letter like we got in this case, you get a resolution from the city council specifying the reasons, and we think that would be enough as well. All we want to know is why the application was denied so that we can decide, first of all, whether to bring a suit or try to negotiate with the local government. And second of all — I'm sorry. Go ahead. And second of all, so the district court can do the streamlined work that Section 332 contemplates. But that's not all you want. Let's say on Monday you get a letter that says your application is denied. And on Friday the city council says the reasons we denied the application were because of this, and this. Is that enough for you? No. It would not be enough because the letter needs to tell us why. It doesn't matter that four days or three days, whatever it is later, there is a resolution that doesn't say yours is denied. It says the reason we denied it is this. That's not good enough. Well, I think you'd have it in a timing question, the Solicitor General frames, whether that was substantially contemporaneous. Well, no, I know. You think that it needs to be in a single document. It has to be in a single document. But if it's not stapled together, you know, here's one. It says denied. And here's one saying the next day, the reasons we denied it are these. I think stapled together would be just fine. No, no. What if they're not stapled? Oh, I'm sorry. I misunderstood. Make it easier for myself. No. We think that the statutory term is definition – sorry, is decision, is a singular. And so it needs to be put together. Ginsburg's answer often means just denied. There is one statute that was mentioned in the brief, and this is 47 U.S.C. 546c3. The franchising authority shall issue a written decision. That's one sentence. Next sentence. Such decision shall state the reasons, therefore. So the requirement of a decision alone doesn't necessitate that reasons be given. Justice Ginsburg, we think it's fine to look at other provisions of the Communications Act. That one particular provision stands apart from the several other provisions that the Chamber of Commerce cited around page 10 of its brief and that we cite in our brief, where the word decision is used by itself and in context clearly to mean a specification of reasons. Where the Communications Act contemplates no statement of reasons, it uses words like notify or order. And so we think it's perfectly fine to look at the whole Act. That one provision is the only countervailing piece of evidence. Your bottom line is, because of this supposed default, you get your – your application is granted. And that seems odd when the thrust of this arrangement is that the decision should be in the hands of the local zoning board or the local council or something. And then to say because of the procedural lapse, then you emerge the winner and it doesn't matter what good reasons the town might have had. Well, there's two important things about that, Justice Ginsburg. First is the ordinary remedy is an injunction. We think that's the ordinary remedy. That's an equitable remedy that, of course, isn't absolute. And the second reason is why that's the remedy. Remember, the whole purpose of this Act is to defeat local intransigence. In other words, process is the problem, not the solution. So simply requiring additional process, additional time, additional reasons, that's exactly what the Act is designed to solve, that problem that existed before 1996. Well, I suppose that could be left up to the district court on remand. Of course, Justice Kennedy. The Eleventh Circuit didn't reach the remedy question. Let me ask you, I think we would have a much different case if at the time of the written notice they appended the official copy of the transcript. Is the problem here that the transcript was too late? No, that's one problem, but it's not the only problem. Because it seems to me you don't make the lateness part. You don't make the lateness argument that the government makes in your question presented. You do say that there has to be a document stating that the applicant has been denied, but providing no reasons. So I suppose we can imply from that that you think that the later copy of the transcript is just not applicable. That's right, Justice Kennedy. We think that's one problem, but it's not the only problem. Even if the transcript had been attached, there still wouldn't have been, based on this letter, a specification of reasons. And I'd be happy to walk the Court through exactly why that's so. But before you do so, why is the transcript required? We had minutes that summarized the testimony. Your position is not that the transcript had to be attached at all? No. I think Justice Kennedy asked me if the transcript had been attached. And so I was saying that, taking that question as I got it, the minutes would be enough as well. I may not have followed this. If the transcript were attached, what? Then that would not be enough on its own, because the letter would still need to tell us where in the transcript the reasons were. And I'd like to walk the Court through. Mr. Fisher, you're deriving all of this from the words ''decision''. And ''decision'', as even the dictionary you principally cite, Black's Law Dictionary states, ''decision'', you know, can mean one of two things. It can mean an opinion or it can mean a judgment. And people refer to it, use that word to refer to either. So why should we interpret it your way? For two reasons, Justice Kagan. One is because the overall context of the Act and the substantial evidence review requirement and the overall purpose tell us that ''decision'' needs to specify reasons. You can't conduct substantial evidence review until you know what the reasons are. Well, that only suggests that you need reasons. It doesn't suggest that the reasons have to appear in a decision as opposed to some other document. Fair enough. So one other part of the Act, which is the expedited review provision, I think also is instructive. The idea that Congress had in mind was that parties could show up in the district court and go straight to the question whether evidence in the record supported the city's decision. Congress did not contemplate what we would have under the city's approach or even the Solicitor General's approach, which is an entire first phase of litigation devoted to figuring out what those reasons are. The larger problem here, of course, is that under your view, the Federal statute says that a local legislative body has to act like an administrative agency. And that raises very serious concerns under Federalism. In the law of zoning generally, forget this Act, in the law of zoning generally, if you go to the Board of Supervisors and want to rezone the property from agriculture to multifamily residential, do we say that due process requires them to give some reason? Is there anything in the law of zoning generally that says you have to give reasons? I don't think generally. If there were a liberty interest or a property interest at stake, but we cite in our brief the Wolfe v. McDonnell case, which says that when liberty or property interests are at stake, minimal due process requires a specification of reasons. And it's not the only time that cities provide specifications of reasons. They do it on their own. If you look at JA 84 and if you look at footnote 4 of our reply brief, we cite numerous instances where the city takes it upon itself already to provide reasons for denials  They do it at the same time. Ginsburg. Mr. Fisher, could you explain how you are disadvantaged? Now, first of all, what happens on remand to the district court? In your view, the Eleventh Circuit rendered its decision, the case is remanded. What happens on remand? Fisher, Well, as the case stands now, we prevailed in the district court and the district court gave us an injunction allowing the site to be constructed. The city took an appeal to the Eleventh Circuit, which reversed on the question of whether the act was violated. So I think what would happen after this Court rules, it would go back to the Eleventh Circuit with the case in that posture. If I could say a couple more things about that. Ginsburg. And then what would then, if this Court should uphold the Eleventh Circuit, then what happens? If you uphold the Eleventh Circuit, then we go back down to the district court and are going to. And what happens there? And I think there we are going to have to have one of these prolonged proceedings to decide what, first of all, what the reasons are. The city has already filed one brief in the district court before this case started to go up on appeal, where it took the position that there were three reasons for its denial, property values, the fact that T-Mobile allegedly already had sufficient service in the area, and compatibility with the neighborhood. The city in this Court has offered some different reasons. The Solicitor General offers a still different take on the transcript and the minutes. And so first we'd have to have in a district court one of these first mini-hearings that I've been describing. And then we would perhaps then be able to litigate the question Congress contemplated, which is substantial evidence, followed by some other arguments we've made. Sotomayor, just for the sake of argument, that we do say that a separate writing that clearly sets forth or sets forth the reasons for denial is adequate. I understand you to say that this is not adequate because it's not clear, presumably. Am I correct? Yes. Under this Board's rules, do – I'm assuming the Board has to be a majoritarian voting rule – rules, but why does every council member have to have the same reason? Can't different people say no for different reasons? I think, Justice Sotomayor, they might be able to. The ordinary course would be a letter that provides reasons that speak for the entire council. But I wouldn't deem it impossible for a letter to come to us that says two city council members voted to deny the application for this reason and two others voted to deny the application for another reason. We can still use that to go into district court, and the district court can do a different job. Scalia, but you say you can't use it in this case. You say that that factor renders the giving of reasons inadequate. No, Justice Scalia, it's not just the multiplicity of people on the Board stating different things. It's the fact that we don't know whether those statements constitute reasons. And this is one thing I really would love to give you a couple of examples. There are many problems, first of all, arising out of the first question, whether or not what citizens and experts say can constitute reasons. The Solicitor General says, well, there has to be a clear indication that the voting members agree with that. Well, what if somebody just says, that's a good point, we'll take it into consideration, or thanks, you know, I'll think about that. What about the fact that a member, him or herself, might say something with an equivocal tone? For example, Dr. Price said, I'm not sure how to assess property values here. Does that count as a reason? All of these kinds of examples, don't they only suggest that a State or a locality would be well advised to write up a little paragraph that clearly states its reasons? But, you know, if they want to take the risk that a district court is going to say, gosh, I just can't find the reasons in this record, it's all too muddled, if they want to take that risk, what in the statute prevents it? The nature of substantial evidence review, which has a limiting principle. No, but, I mean, substantial evidence review requires reasons. If they want to take the risk that their minutes or their transcript will not allow the district court to do substantial evidence review, then, you know, they'll lose. But, Justice Kagan, substantial evidence review requires them to defend only on their actual reasons. And what the City wants to do is have a record of over 100 pages where anything it can find a foothold in, the lawyers can come in and make an argument that that's why they denied something. That not only frustrates process, but even, Justice Kennedy, your question about federalism, it starts to frustrate federalism, because now Federal courts are deciding why local government does that. Scalia, I'm surprised that you're willing to accept that there does not have to be a reason or a number of reasons that the city council agrees on, that, you know, seven members of the city council, each one of them has a different reason, and that's okay. Do you think that that's what the statute means? Well, I'm not sure, Justice Kennedy, and Justice Scalia. It — you don't have to decide that in this case. The Solicitor General reserves it in a footnote. I'm not sure that just like this voting body can reach a decision without a single reason. You know, these local government boards, I think, are really acting in an adjudicatory posture here. So I wouldn't want to foreclose that. One can interpret the statute as demanding that they have a reason. Now, to be sure, that's contrary to normal legislative action. Congress doesn't have to have a particular reason for a statute. Every congressman can have a different reason, and it's still valid. But I would read this as saying the city needs to — when it denies, it has to have a reason for denying. I don't know how else you read it. I certainly won't argue with that. Breyer. Then what's the disagreement? I mean, what's the disagreement between you and the Solicitor General? Justice Brandeis said years ago, which I thought was a great statement of law, which doesn't ordinarily appear, before we can say whether an agency decision is right or wrong, we have to understand what it means. You get some piece of paper, you can't figure out what it means, well, then they'll send it back, or they say no. That's what judges do, administrative agencies, all the time. Your question says, do they have to have reasons? Yeah. Their question says, can it appear in a separate document? Why not? As long as the document is given about the same time. So what's the problem? The problem — we do agree with the Solicitor General you need reasons. We also agree with the Solicitor General that they need to be clear. Where we part ways with the Solicitor General is on a proposition that the ordinary administrative record can meet that clarity standard. And if I could point you to the second point, Justice Breyer, I think that's a good point. Breyer, sometimes it could, sometimes it couldn't. It depends on what it says. Well, let me just talk about the record in this case, Justice Breyer. But that's the — I know. That's what you really want to say. You want to say the record here isn't good enough. But it seems to me that the one thing we're not deciding is whether the record here is good enough. Rather, the questions have been put to us in general terms. We can answer them in general terms. We probably even might be able to write an opinion in three paragraphs. But what I want to use is the record here to be illustrative, Justice Breyer. There's nothing unusual about this record in the sense that — Ah, yes. But to do that, I would have to know quite a lot, wouldn't I, about the situation of your client, about the situation of the city council, about what was actually meant by what they said, about the context. You understand the problem. Well, let me just give you a few examples. The first one is that JA-336, 338, and 340 are the parts of the minutes that the city and the assistant general rely on. And they say things, for example, in equivocal ways, as I was describing. We don't know whether that was a reason. We also have a temporal problem that arises. As I understand the SG's position, the SG says there were five members of the council, three of them talked about the incompatibility of this tower with the neighborhood. So what in that statement do you contest? That statement — Do you think the three of them did not base this on the incompatibility of the fake tree with the neighborhood? I'm not 100 percent certain they did, because the motion as it sets forth in JA-340 comes after all of those statements. There were many other statements, Justice Kagan. One council member said, I don't think Shell Tower should ever be able to be built in a residential neighborhood. Another asked whether T-Mobile could use different technology to establish the cell site. So we don't know whether these statements, which also were right around the same time, also are things the city could defend on. And I'm not sure the Solicitor General even has taken a position as to whether or not there are any other reasons in the record. The Solicitor General has told us that one thing — But the Solicitor General only needs one. Well, no, they don't necessarily need one, Justice Kagan, because in the district court we're going to challenge for substantial evidence those reasons. So it's going to be very important if in the district court we can show, as we think we can, that substantial evidence does not support the city's incompatibility argument. Then the question is going to be, is there another reason in the record? And we haven't — we have perhaps conflicting answers from the other two lawyers in the room today. Well, then you're going to reach the question that Justice Scalia had a view of, which was, you know, if two people think X and two people think Y and one person thinks Z, is that sufficient? But as long as you have something that three people think, why isn't that sufficient? It's not sufficient because we can't guarantee that that is why they voted. These are statements that come before a vote. And just like in this oral argument today, there's going to be many concerns and questions that precede the vote. The vote may be for a different reason. You don't know, I'd like to think, that every answer I give today is going to assuage any question that I get, but that's not necessarily the case. And it's not necessarily the case that something a local council person says for a round of applause in the room is exactly why they're going to vote 10 minutes later on the application. If I could reserve the remainder of my time. Roberts. Thank you, counsel. Ms. O'Connell. Mr. Chief Justice, and may it please the Court. It's our position that a local government must provide reasons when it denies permission to construct a cell tower so that a court can conduct substantial evidence review as contemplated by the statute, but those reasons don't necessarily need to be included in the same document as the city's written denial of the application. It's fine for the city to give its reasons in some other document like meeting minutes. If the local government relies on a separate document, that document must be available at the time the written decision is issued. Where does that come from? There's nothing, Ms. O'Connell, there's nothing in the statute that says that the decision doesn't have to have the reasons. Something has to have the reasons. It has to be, you say, fairly contemporaneous. I don't see anything. You are inserting something into the statute that is not there. The primary reason why we're saying it has to come out at the same time is because otherwise it would frustrate the judicial review provision where the applicant has 30 days under the statute to decide what action to take based on the denial. Ginsburg-Miller But wouldn't it be more sensible, then, to take a suggestion that has been made that we run the 30 days from when reasons are given, run 30 days from when the minutes are available? I don't know why you have chosen a route that would say this applicant wins automatically, no hearing, no nothing. It doesn't matter that town's council had good reasons for it, they weren't contemporaneous, that's the end of it. O'Connell I think one reason why, Justice Ginsburg, is because it's difficult to read the statute that way. The 30 days runs from the final action of the local government, and the local government has to issue a decision in writing. It would be difficult to say, once you have a letter in hand that says, dear applicant, your application has been denied, that you don't have a written decision. The applicant would be left to wonder whether reasons are coming at all, and if so, what those reasons are going to be. And I think if you follow that to its logical conclusion, if you didn't have reasons and didn't know if they were coming, I guess what you would do, then, is wait 150 days from the day you filed your application, and then file a lawsuit saying they didn't act on my application in a reasonable time, which seems not correct, given the circumstances. Breyer How does it work in the ordinary agency, which I should know, but I don't? The Federal Power Commission, a blessed memory, is faced with an application by El Paso Natural Gas to add an extension in a little area of New Mexico. The Power Commission denies. There are five votes. One person says, I'm denying because we don't need the gas. A second person says, I'm denying because it's ugly. A third person says, I'm denying because it blocks certain animals from getting  And the other two vote to grant. All right? That's arisen in the course of the last hundred years, something like that. How do the courts handle that? In footnote 6 of our brief, we described some cases along those lines where, I mean, in this case, we think that you have a majority, three of five giving you a majority. But I just want to know how it works in the case I plot. Right. In the cases we describe in footnote 6, some courts have said, and the D.C. Circuit did assume in one case that we cited that you need a majority, but other courts have said that it's okay as long as, if everybody gives a different rationale, as long as you can get to a majority, you can conduct substantial evidence review of each of those rationales. And we think that makes sense here, because it's the statute gives reasons why you can't deny an application. It doesn't say there are only certain permissible reasons why you can't. Scalia, doesn't the Administrative Procedure Act require providing reasons when there's a grant or a denial? Yes. And we agree that reasons are required. The question Justice Breyer was asking was, what if you don't have a majority in support of any particular rationale? And the response is, we've cited some cases in footnote 6. Don't you have to give the reasons with the decision under the APA? Yes, but, but. So how can you give it if there is no majority for any single reason? You would just, you would give the rationales of each individual council member. This is not, it's not as a problem. Has this Court ever held that? Because I would never hold that. No, no. It's not absurd. We've, Justice Scalia, we cited some cases in footnote 6 of our brief that indicate that other courts have allowed that to occur. I'm a little bit confused by that because, and this is what troubles me the most, you get five council members, five different reasons. At what point does he win? Meaning, if he proves that three of them were wrong in their reasons, so there wasn't a majority vote for anything, that's what he has to do? There weren't a majority of council members that gave a reason that wasn't prohibited by the statute or was not supported by substantial evidence. That's a, that's a, a. And it's not a problem that's unique to this particular context. That comes up sometimes in agency decisions where there's a multi-member body that's heading the agency. The case is in footnote 6.  Agencies have to comply with SEC v. Chenery. Or, pardon me, city councils have to comply with SEC v. Chenery. We think that by requiring that decisions be in writing and supported by substantial evidence and then also by providing for judicial review of those decisions, implicit in the statute and explicit in the legislative history is that the local government has to give reasons. Either under general laws of zoning or under any similar Federal statute, have we ever imposed, has the Federal Government ever imposed requirements like this on a legislative body? I don't think so. But it's not, I mean, we, we realize that this is a little bit of an anomaly in this statute, that normally a city council can do whatever it wants and it's not required to give reasons for its decisions. Is it just a legislative body? No. In this case, we think it's acting sort of as a. I would, I would consider this as an adjudicative body. Right. It's, it's, it's not making laws that would apply prospectively, but taking a, a specific ordinance that already exists and applying it to the facts of this case. But in any event, that is the one thing that we think the statute does require local governments to do that could be different from its normal procedure, is to give reasons. Sotomayor, what does the, what does the Petitioner do with the one council member who didn't give reasons? What does that person count as? So, so if he didn't give a reason, then I think you just don't count his, his vote toward the, the people that gave a rationale. Now we have a split board because it was four people who were there. There were five. There were five. Yes. One didn't speak, so you don't count his or her vote. So it's a split vote. Yes, but there were still three people that gave incompatibility with the neighborhood as their, as their reason. Alito, what if, what if three people say this is, this is incompatible with the neighborhood, and then later other, another member or other members provide other reasons, and those other reasons are either invalid under the statute or not supported by substantial evidence? Under that circumstance, is it, can it be inferred that the final vote of those who previously expressed the view that this was bad for aesthetic reasons was the reason for their vote? That seems to be Mr. Fisher's argument, and what's your answer to that? Our, I think, I want to make clear that it's, we're not saying that when you look through the, the written administrative record to determine what the reasons are, that you read through the whole transcript and that anything that came up during the hearing, like what happens when the power goes out, or can't you make these things smaller, or something like that, is the reason why a particular council member voted, just as we wouldn't think questions at oral argument are your reasons for voting to affirm or reverse. But in this case, you can pretty easily see that at the end of the hearing, the mayor said, okay, now everybody's finished giving their testimony, let's hear from the council, and they went down the line and everybody said what they thought about it. It's those that we think are the reasons that they first give. Ms. O'Connell, I think a part of Mr. Fisher's argument is that if everybody agrees that reasons have to be given, what sense does it make to require judges to scour the minutes and to scour the transcript and to try to make these judgment calls about, you know, when an individual council member has given a reason? Why not, at that point, once we're in the mode of requiring things, why not just require that the reasons be stated in the two or three sentences that the council or other body promulgates? It's not our position that such a requirement would be difficult to comply with. The reason we oppose it is because we don't think Congress went that far. By requiring that decisions be supported by substantial evidence and providing for judicial review, we think Congress imposed a requirement that reasons be given. But other than that, they have a savings clause that says that other than what they specifically said, nothing else should interfere with the decisionmaking process of local governments. And so if it's part of that decisionmaking process to normally talk about it at a meeting and give the decisions orally and then write up a summary that's written, then we don't think that the statute should be what's required to do that. Scalia. Scalia. I think Justice Kagan is not disagreeing with you. She's saying, yes, reasons must be given. And reasons aren't given if there's just this exchange in which a congressman or a councilman expresses a certain fondness for a particular view. What is the big deal of requiring either that the full council give its reasons or, if you think it's enough that different councilmen have different reasons, each councilman say, I am voting against this for this reason. What is the big deal about that? There is certainly not a big deal about it. Especially since you're making the council do the same thing. You're making them give reasons, right? Right. So why not say you have to spell the reasons out? I think the question – that is part of substantial evidence review and part of Chenery, that the reasons have to be clear. That's not part of our test. It's inherent in substantial evidence review, and we do think the statement has to be sufficiently clear to conduct substantial evidence review. Thank you, counsel. Mr. Carruthers. Mr. Chief Justice, and may it please the Court, the Respondent in this case, the City Attorney, Mr. Roswell, the Tamekas, the Solicitor General, and the 11th, 4th, and 8th Circuits all agree that 332C7B3 neither explicitly nor implicitly requires that reasons be provided in the written denial itself as long as there are reasons provided elsewhere in the written minutes or transcript. In this case – So when do you think the statute of limitation runs? That's a very good question. For 30 days. I have pondered that because it is an issue in this case, but also it's an issue going forward. It's not really an issue in our case because the 30 days when it ran, there had already been the approval of the minutes, the written denial had gone out, and the appeal was able to be timely. There seems to be a split in the Federal circuits as to whether that should be. Excuse me. Was able to be timely, which means if all of that comes in 5 days before the deadline it is still able to be timely? I thought they were given 30 days to decide whether they would go forward or not. And you're saying it's enough if before the 30 days has totally expired, they can figure out what the city council decided. Justice Scalia, that is essentially correct, but what we are saying is we believe that the 30 days should run, as Justice Kagan suggested, from the approval of the minutes. If you have the minutes approved. In this case, May 10th, the minutes were approved, and May 13th the suit was filed because the time ran out on May 14th. That's correct. And you think that's sufficient? I think it is always sufficient for this case. The 30-day period is so. There can be a carefully reasoned decision whether or not to file a suit. Under your view, you have only 3 days. Justice Kennedy, that is what happened in this case. That is not the rule. I thought that you were taking the position in answer to the government that says you have to have it contemporaneous because of the 30 days that the company has to make up its mind whether to seek judicial review. But I think you made the suggestion, which I then put to counsel, that just have the 30 days run from when the reasons are available. So instead of having it run from when they send you a letter that says denied, treat that as not final until the reasons are given. I thought that was your position. Justice Ginsburg, that is exactly what we're saying, and for three reasons. One, the approval of the minutes, we've talked about substantial evidence. We've talked about the substantial evidence has to be affirmed by reasons given somewhere in the record. The way to know what that is, it doesn't talk about a letter. It talks about final action in B-4. And therefore, the final action of those minutes is the approval of those minutes. Secondarily, what that does is when the minutes are approved, the applicant, if unsuccessful, has the opportunity to have 30 full days knowing what's in the record in order to file the appeal, and that dovetails with the recommendation of the solicitor general that there be contemporaneous minutes. Are you saying that the actual decision is the minutes as opposed to the letter you've sent? That is correct. The letter is a more or less, well, Petitioner does not like this word, it is a notification. It is a statement that it has been denied. Why is that? Because as this Court has referred to it and other courts have referred to it, this whole telecommunications jurisprudence across the country is a patchwork. And in this particular instance, there are jurisdictions that don't require any notification. There are jurisdictions that require something be entered on the minutes. There are jurisdictions that require a letter. There are jurisdictions that require a certified letter. So in your view, if they had waited 60 days before they approved the minutes, then we wait until that for the time period to run? That is correct, Justice Kennedy. The only impediment to any of this is the shot clock. And I think that if the 150 days starts to run, there's going to be a problem if the local government hasn't approved their minutes by that time. That may well not give the applicant a record that does not have substantial evidence in it. I mean, the facility placing, everyone loves cell phones, apparently. Nobody likes towers, apparently. So Congress passes a law. It says, you've got to have towers, I'm sorry. And the local community can stop it, but they can't stop it for one of three substantive reasons, and in addition, they have to show that their decision was rational, which is done, or reasonable, which is done by having a record with substantial evidence. That's what this means to me. Now, your clients and others aren't used to being agencies. But they're being treated like agencies, and therefore, the simplest thing is to read this two things together, just what Justice Kagan said. Write the decision and give your reasons, because otherwise there's no way to know whether there's substantial evidence or not. It's in the same clause, it's in the same phrase, the words are right there. It says decision supported by substantial evidence. I know we could be – that's, I think, the basic argument. The Solicitor General doesn't go that far, but if we don't have simplicity, we'll have 2 million different ways of going about it, 1.2 million different cities and towns. Sotomayor So why couldn't the city council or this legislative body have waited until its official minutes and sent the letter that day with the minutes? And that they could have, and I think that is what the Solicitor General is recommending. That was certainly not the law at the time, but that that is the way to have contemporaneous minutes is to have the writing be basically at the time that it's approved. One of the problems is, and one of the problems with this decision to deny a request is, in order to state those reasons, it has to have the very minutes approved in order to look at it and say, these are the reasons. Now, I would suggest to this Court that that will only start a new inquiry, and that is the minutes – excuse me, Justice Scalia. Scalia I don't understand what you're saying. It requires a written decision, okay? And the city council here issued a written decision to the phone company saying, we have decided to deny your request. Now, and you're saying that is not a written decision. You have to wait until the minutes are written up. So what, were they lying when they said we've decided? I think what I'm saying, Justice Scalia, is that the writing that is sent, we've had a lot of verbiage in the briefs about what is a decision and how to characterize that decision, and whether it has some sort of opinion to it or whether it's just this is what we did. The statute requires substantial evidence in a written record which necessitates reasons. Those can only be ascertained by the official minutes. Breyer Then you're agreeing with your opponents, it seems to me. You have a document. The document says, deny, and there it gives the reasons for denying so people can see if there's substantial evidence. You're just saying it was the later document. They're saying it was the earlier document. I don't know. Do you agree with them, in our math, this one document? I don't agree with him on that, Justice Breyer, but I agree with what you just stated, that the minutes, when approved, they have substantial evidence. Breyer I don't know if they should be called the minutes. I'm not an expert on that area of city government. I don't know whether you want to call the document minutes or whether you want to call the document written decision. That seems to be not before us, but what is before us is whether the decision has to have in it the reasons so that we can tell if it's supported by substantial evidence. You agree on that one? I, again, I agree, Justice Breyer, as you have stated it. I disagree that that particular decision is the one that is sent out right after the hearing, and in my proposal, it wouldn't be sent right after the hearing. It would be sent after the minutes, so you would have the collective record, which is referred to by the Eleventh Circuit, which could be the case. Sotomayor Well, that endorses, more or less, the SG's position. What you're saying, I think, in answer to the question presented, the written denial doesn't have to itself, as a document, provide the reasons, but when it's sent, it has to have attached to it, referenced, something that is available telling you the reasons. Well, and I'm not sure it has to tell the reasons if it attaches that, because the reasons will be in there, and it will have to the district court to either ascertain, glean, clearly indicate it. It's ineffective unless that exists, so that what was given here in writing was not a decision, but what? A, we intend to decide when the minutes are finally written? A prediction? What was it that the full company got? As a notification of the denial, but the specific denial. Scalia It hasn't been denied yet. You're saying it's not denied until the minutes are written. Which is, you know, God knows when. Well, it has to be done with the minutes, and you've got the shot clock running, but you can't have, you can't make the applicant satisfy unless you have the minutes. You shouldn't send anything out then, because according to you, there has been no decision. You shouldn't send out a notice that we've decided. It, going forward, Justice Scalia, that is our recommendation, and I think that if you adopt, as Omnipoint has and Helcher and some other Federal cases, that, in fact, it should be the approval of the minutes, then I think that whole issue goes away, because the letter will be there. Kennedy But it's not your change in your position. Page 34 of the writ brief, given the plain wording of the statute, whether a document from a, the question is whether a document from a State or local government stating the application has been denied, but providing no reasons, can satisfy the statutory requirement, and the simple, straightforward answer is yes. So now you're changing your position. Kennedy Justice Kennedy, I don't believe I am stating the position. What we're saying is it satisfies that portion of the statute. It doesn't satisfy the substantial evidence in the written record, which has got to be, which we contend, separated by the word and, the conjunctive. That is a separate requirement. And one of the things I think that I want to, the point I want to make is, we're taking Kennedy But we're, but surely under your view, and I'm not convinced that your position hasn't radically changed, but surely under your view, what you explained to us at page 34, the 30 days begins to run the minute the notice is given. Justice Kennedy, again, I think when we use words like notice and decision, the, the letter, or the statute says decision in writing of the denial. That doesn't mean that it's elevated to a decision by this Court, or a decision by a lower court that has all of the findings and conclusions and the reasons, because the reasons are going to come from the minutes, and that's why we're advocating that the minutes be the start of the 30-day period, and there can be a confluence of the letter. Could you argue that it would be? Alito Can I say what the statute means in light of the practicalities of the situation? Now, since it talks about substantial evidence review, there's an argument that a municipality, when it makes a decision like this, should be treated pretty much like a Federal administrative agency. But on the other hand, municipalities are sometimes very small. These, these bodies are, consists of laypeople who are not learned in the law. They may not have attorneys available to them who are very knowledgeable about Federal telecommunications law. So can you say something about that situation? Is any of that true with respect to, to Roswell? And what do you think Congress may have had in mind in this situation with respect to the treatment of local governing bodies like Federal administrative agencies? Well, Justice Alito, that, that is a multi-tiered question. Let me see if I can answer it. Number one, the amicus brief that was filed on behalf of the City of Roswell basically lays out the fact that you are exactly correct. There are lots of municipalities and local governments throughout this country that have trouble dealing with a pretty sophisticated Federal statute. The City of Roswell has a relative degree of sophistication and has attorneys and it has planners and can do that. But no court has ever held, including this court, that the Chenery-type analysis for what needs to be an administrative decision has an application to a local government. If you look, for instance, that, that there is lots of argument from Petitioner that there's something wrong with what Roswell did. And if you just look at specifically, they had evidence in the record. They had people who said this, this, this, this, and this. You had four council members, three of whom said aesthetics, not right for the area, and one of them said that there was a diminution of property value, and the other was complement. Kagan. Sotomayor, I wonder whether what Justice Alito pointed out about the nature of local governments, which you agreed with, whether that doesn't suggest that we should try to keep our rule quite simple. In other words, given that nobody in small local governments has access to great And that rule, honestly, would be Mr. Fisher's rule. It would just say, in your decision, write a sentence or two saying why. Because otherwise, if we don't have that rule, and every judge has to look through the minutes and the transcript and anything else in the record to decide whether a reason is clear enough, there are going to be a lot of local governments that are going to get kind of caught. And the judge is going to say, I'm sorry, it's not clear enough, even though if the government had spent just five minutes, it could have made it clear enough. And maybe we should just say do that so that you don't get caught. Well, Justice Kagan, I don't object to that as long as the minutes are the final decision, so the 30 days can run from there, but then you're going to have that decision that's not going to come out for a couple months until the city attorneys and the planners have time to digest the decision in the record in order to formulate that. And I will suggest to the Court that if, in fact, that occurs, it starts the process over, because then the challenge is going to be the statements in the letter do not accurately reflect the minutes, they misstate the minutes, they mischaracterize the minutes. In fact, they're a post hoc rationalization of what was in the minutes. We are going to have yet another line of inquiry and challenge which could be avoided if we simply waited for the letter and approved the minutes. So that inquiry and challenge will be left up to judges to figure out what the minutes say, don't say, and what the reasons were. Well, Justice Sotomayor, as I read the jurisprudence, the fact is the substantial evidence in a written record, and to see the reasons, is pretty much left up to the district court. Let's go back to we had five members here. One didn't talk. Do you agree we don't count that person? Correct. All right. Now, do we need a majority rule, a majority of the council people giving a reason? I don't believe that is the case, Justice Sotomayor, and I will say it because of this. It could be, well, let's leave that situation. The situation we had here was we had three persons of a pretty like mind, the aesthetics, the land use, the diminution of property values, that made a determination said, we think that these are real bad. Then you have a pretty long motion by Dr. Price. Well, they said that before the vote. We don't know why they voted. What's the big deal of having the city council say we deny this request for the following reasons, one, two, three? That would be very clear. There would be no problem at all. Justice Scalia, I think that is exactly what happened in that case, in this case, by the majority vote on Dr. Price's motion. Now, I will concede to you that the council members did not then stand and say I'm voting for Dr. Price's motion because of this, this, and this. Well, suppose we issue an opinion in this case that says that the formal instrument of denial must say in simple terms the reason or reasons for the denial. All right. Let's say we issue that opinion. And six months later, something like this comes up in some rural municipality. Let's say they've got 1,000 people. And how likely is it that the members of the governing body there or their attorney, if they have an attorney, will be familiar with our decision in T-Mobile South v. City of Roswell? Well, I don't know the answer to that exactly, Justice Alito, but I will say that whatever the decision in this case that — Everybody in the country hangs on our every word. They're all going to read this opinion. What everybody in the country has, Justice Alito, is they have people knocking at the door to put up cell towers. So this is a topic that many, many cities are attuned to. But what I am attempting to say and urge the Court is to adopt, I think, all of the concerns the Court raises. If the 30 days runs from the approval of the minutes, then you have the opportunity to have a fighting. Please articulate your rule, because you just said to us earlier that not every body of this type has minutes or minutes that become the statement of reasons. So what's the rule, a general rule, about what's the final decision and when the time starts to run? Assuming — Justice Sotomayor, what I would craft and what I believe to be the appropriate rule is the denial letter simply says deny. That's what the statute says. It doesn't require any reasons. It could have required reasons. So put that issue aside. And then let the approval of the minutes be the final action that triggers the running of the 30 days. How does that rule — now we're forcing minutes on every — on every city council to have contained the statement of reasons? Justice Sotomayor, I don't know how to answer that. I don't know of a jurisdiction that does not have some form of minutes or ratification of the previous actions and discussions they've taken, which are generally approved at the next meeting. I think, in fact, if they're going to have substantial evidence in a written record whenever those minutes are approved, they had better get into doing minutes, because that is what's going to be required. Why do we have to say — why don't we take word for word almost what the court said? What this statute requires is that there be a written denial, and we can forget whether it's separate or not. I don't know. Describing the reasons for the denial and containing a sufficient explanation to permit the court to evaluate the evidence. Period. Now, that's what the city has to do. And if they produce something that's a mess because it's a 98-page thing of minutes and the court can't figure out what it is, you'll get a decision like this. If, in fact, somebody summarizes at the beginning, these are the reasons that we have denied and therefore we do deny it, it won't be a problem. Well, Justice Breyer, I simply would argue that the minutes have to have substantial evidence, which is — or they have to have the reasons, which is supported by the substantial evidence. And if the court can't discern what those are, they're not going to survive the substantial evidence test. Counsel, you spoke of the statutory requirement of a denial letter. Where is that? Justice Scalia, the statute indicates that in B-3, any decision by a State or local government or instrumentality thereof to deny a request — Right. — shall be in writing. That is what I refer to as the denial letter. That's not the denial letter. That's what you're referring to as the minutes. You say it's the minutes that comply with that. No, Your Honor, I am saying that the minutes do comply with this. Yes. But a simple notification letter of the denial does not comply. There's no requirement of a notification letter, whatever. There's just that provision that any decision shall be in writing and supported by substantial evidence.  I'm not trying to impose that on them, but we — I think we have to take the statute as it's written. We have to have some meaning to what that is. Taking it as it's written, you're making up a denial letter. There's no requirement of a denial letter. So if, indeed, the decision is the minutes, you don't have to do anything until the minutes are published.  That is correct. And, Justice Scalia, to the extent we're talking about the same thing, I believe that the decision from whence the time should run is, in fact, that approval of the minutes, which has the reasons, based upon the substantial record. I don't see that that, whether it's a denial, whether it's a notification, whatever it is, it doesn't have to have reasons. And so it really doesn't help the applicant and doesn't help the city, but we're trying to give the words in the statute some effect. We do not want to give them the effect that it is a decision and glorify something, because a decision can be no. Everybody else, like you, thinks that there has to be a denial letter. Right? Is that a unique perception that you have come to? Or is it generally thought that you have to have a denial letter? I think there is a perception, because of what the statute says, that there has to be a denial letter, but it doesn't have to have reasons. And if you don't have the reasons in the denial letter, it's not fair to the applicant to start the appeal time running for the 30 days. Thank you. Did you take that position in the district court? I certainly did. Justice Kennedy, I'm struggling to answer that question, because we didn't get very far in the district court. We never really got a chance to talk about substantial evidence, because the court decided I'm not going to reach that prong of B-3. I'm going to say that I can't understand the verdict. Excuse me. Thank you very much. Thank you, counsel. Mr. Fisher, you have four minutes remaining. Thank you. I'd like to make a point about our rule and then turn to the practicalities. First, I think what came before me helped explain why a separate letter specifying the reasons for denial is not only required by the statute, but is the only way to make it work. If you look at the minutes that the city issued here, and they're the back of the joint appendix, remember, as I think has been noted, cities don't have to issue minutes, and so you're not always going to have minutes. But on the theory that the minutes here would have been enough, look at the minutes and if you want to look later at J.A. 338, J.A. 336, and J.A. 340, there are some of the reasons, as the Solicitor General put it, potential reasons offered by various council members before the vote. But if you look at J.A. 340, you'll see that all of those are separated from the motion. So the motion doesn't incorporate any of the reasons, not even what Dr. Price said before she made her motion. So imagine yourself a district judge getting this set of minutes. You don't know what the city's reasons were for denying the permit. And that's the problem that T-Mobile has and that's the problem that district judges have. And I want to turn to Justice Alito's question, and, Justice Kennedy, I think you also asked about the federalism implications for local governments. First of all, let me start with the City of Roswell. The City of Roswell's own code, and this is at J.A. 84, requires it to give a separate document with reasons if it denies an application to construct a cell site on city-owned property. All we're asking the city to do is do what it already does with respect to applications for city-owned property. Now, you also point out there are rural areas in the country that have smaller staffs and jurisdictions. At page 13 of our reply brief, we cite statutes from other states like New Hampshire, Nevada, Idaho, that already have as a matter of State law the rule that we pronounce — I'm sorry, the rule that we propose. The rural jurisdictions in those states don't seem to have difficulty doing it. And I think the reason why is because it's been said a few times today. It just requires a few sentences usually. It just tells us what the reasons are and tells the district court what the reasons are so that when we get into court, we can have the streamlined proceeding that Congress imagined and that they can be done as the statute itself requires on an expedited basis. That's all we're asking for today. And we think that any other rule is going to create problems at the lower — I'm sorry, before you ever get to court and even more problems once we get to court. Kagan. Mr. Fisher, suppose that I think that you're right about that, but then the question is, did Congress require that? And I take that the SG is really saying, no, Congress required reasons. It required that by saying that there was substantial evidence review, but that it didn't require the reasons to be in any particular form. And indeed, there's a Savings Clause which says that all doubts go to the State and local governments in this area. So notwithstanding that this is going to actually get State and local governments into some trouble, and notwithstanding that district courts are going to struggle with it, we should go with the SG's rule rather than with yours. We think the best reading of sub 3 is that Congress actually did require this. As the city itself pointed out, it separates the notion of a decision in writing from whether it has substantial evidence in the record that supports it. So when you ask what the decision in writing is, you need we think the best reading of that is that's the reasons. The reasons have to be supported by substantial evidence. And you can't ask the substantial evidence question until you know what the reasons are. And I think also for the other reasons that we've pointed out and the Chamber of Commerce pointed out, how the Communications Act uses the word decision in a particular  It uses the word decision in other statutes to signify that an explanation is something embedded in that. Not as is often the case, and the city itself characterized the denial letter today I think aptly as a notification. Well, the Communications Act uses the word notify notification to refer to other kinds of advisements that need to be given. That's not the word Congress chose here. So, Justice Kagan, I agree that if you look at this statute, you might wonder to yourself if you just read the words in a vacuum, which rule comes out of it, ours or the SG's. But we know from city of Arlington, as this Court said, that the limitations in sub 3 are limitations that Congress did intend to impose, and the best reading of those limitations are the ones that we've given. Thank you, counsel. The case is submitted.